**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LALEMANT N.V.<br><br>For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Civil Action No. 26-Misc. ______ |

**DECLARATION OF ARTHUR SEYNAEVE IN SUPPORT OF APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

I, Arthur Seynaeve, declare as follows:

1. I am the Chief Executive Officer of Applicant Lalemant N.V. ("**Lalemant**"). I am over the age of 18 and can testify to the facts herein.

2. I respectfully submit this Declaration in support of the application for discovery pursuant to 28 U.S.C. § 1782 (the "**Application**"), seeking financial records from certain banking and financial entities in aid of reasonably contemplated foreign civil proceedings in Belgium (the "**Belgian Proceedings**").

3. Lalemant is a company registered under the laws of Belgium with a registered address of Ottergemsesteenweg 417 - 9000 Ghent, Belgium.

## I. The Lowlands Mimosa Incident

4. Lalemant and Cometsambre, S.A. ("**Cometsambre**") were parties to a transportation agreement (the "**Agreement**").

5. Lalemant also acted as the vessel Lowlands Mimosa's agent.

6. On or about June 22-23, 2022, two fires broke out onboard the Lowlands Mimosa while Cometsambre's scrap metal was being loaded in Ghent, Belgium (the "**Lowlands Fire**"). The fires caused significant damage exceeding $30,000,000 (the "**Claim**"). Cometsambre is liable

to Lalemant for the Claim pursuant to the Agreement. Lalemant commenced arbitration in London and awaits an award.

7. The cause of the fire relates to Cometsambre's inclusion of unreasonably high levels of impurities in its metal, and it was not the first time it had experienced such an issue.

## II. The Comet Group Structure

8. Cometsambre is a Belgian company engaged in ferrous metal recycling and trading.

9. Cometsambre operates shredding sites for scrap metal.

10. Comet Traitements S.A. is a sister company of Cometsambre, and it is engaged in post-shredder metal treatment and recycling. A description of the history of Cometsambre and its affiliates can be found at the following link: *https://www.cometgroup.be/le-groupe-comet/history*.

11. According to Cometsambre's FY2024 financial filing, it owns 100% interests in Comet Fluvial SRL and Comet France SAS. Cometsambre also owns interests in various other companies, such as Ecofer SA ("**Ecofer**"), Covanord SAS, Terecoval SAS, and La Barrière SCI. The aforementioned companies operate under the trade title "**Comet Group**" or "**Groupe Comet**." A true and correct copy of Cometsambre's FY2024 financial filing is attached hereto as **Exhibit 1**.

12. According to Compagnie Belge de Participations Industrielles et Immobilières S.A.'s ("**CBPII**") FY2025 financial filings, as of December 31, 2025, CBPII owns 85%+ of Comet Traitements and Cometsambre. CBPII is also the 100% owner of various other companies. A true and correct copy of CBPII's FY2025 financial filing is attached hereto as **Exhibit 2**.

13. According to public records, the ultimate beneficial owners of CBPII, as of October 13, 2022, included Maxime Grosjean, Guillaume Grosjean, Aurore Grosjean, Charlotte Grosjean,

Juliette Grosjean, and Philippe Grosjean (the "**UBOs**"). A true and correct copy of the public record is attached hereto as **Exhibit 3**.

14. The governance of the Comet Group is concentrated amongst the UBOs, principally Philippe Grosjean and members of his family. *See, e.g.,* Exhibits 2-3.

15. Philippe Grosjean serves as Managing Director of CBPII and is a permanent representative of CBPII on the boards of Cometsambre, Comet Traitements, and Comet Group Holding SRL ("**CGH**"); he also serves as president of Ecofer. A true and correct copy of CGH's Constitution is attached hereto as **Exhibit 4**, and a true and correct copy of Ecofer's FY2025 financial filing is attached hereto as **Exhibit 5**.

## III. Corporate Malfeasance Following the Lowlands Fire

16. The Lowlands Fire gave rise to the significant and largely indefensible Claim exceeding $30 million.

17. On April 21, 2022, Cometsambre repurchased $8,680,000[1] of its own shares from the Société Fédérale de Participations et d'Investissement SA and SRIW Environnement SA.[2] A true and correct copy of Cometsambre's FY2022 financial filing is attached hereto as **Exhibit 6**.

18. Cometsambre has never recorded a provision for the Claim in any of its accounts for fiscal years 2022 through 2025, despite litigation and arbitration ongoing. A true and correct copy of Cometsambre's FY2023 financial filing is attached hereto as **Exhibit 7**.

19. During FY2023, the only provision on Cometsambre's books—a $537,000 provision for financial risks—was released in its entirety. *See* Exhibit 1 at p. 30.

[1] Cometsambre reports its annual financials in Euros, regardless of whether it conducts business in United States Dollars. Numbers referenced herein have been converted to dollars uniformly at the relevant prevailing conversion rate.

[2] This repurchase occurred two months before the Lowlands Fire.

20. In FY2022, Cometsambre approved a $5,450,000 dividend, despite describing London arbitration in its management report as "vraisemblable" (likely) with financial consequences impossible to predict. *See* Exhibit 7 at p. 46.

21. In FY2023, Cometsambre paid its shareholders $5,725,000 in dividends. It closed the following fiscal year with a loss of $660,000. *See* Exhibits 1, 7.

22. Cometsambre did not issue any dividends for the five years preceding the Lowlands Fire. True and correct copies of Cometsambre's FY2017-FY2021 financial filings are attached hereto as **Exhibits 8-12**.

23. These dividends were substantially in excess of the profits generated in the relevant years, and a substantial portion was funded out of accumulated reserves, rather than earnings.

24. On July 21, 2026, the High Court of England delivered a judgment in favor of Lloyd's of London and against Cometsambre (the "**Lloyd's Judgment**"), holding that Lloyd's properly avoided its contract for coverage relating to the Lowlands Fire on the ground that Cometsambre had failed to disclose prior fires that in general arose from the same cause. A true and correct copy of the Lloyd's Judgment is attached hereto as **Exhibit 13**.

25. On July 16, 2026, just five days before the Lloyd's Judgment, the UBOs formed Comet Group Holding SRL in Belgium. *See* Exhibit 4.

26. According to Comet Group Holding SRL's Statutory Auditor's Report to the Founders dated June 18, 2026 (the "**Auditor's Report**"), CBPII contributed €117,666,750 in kind of the following shares in exchange for 117,666,750 shares (87.05%) of Comet Group Holding SRL:

a. 1,820 shares of Cometsambre, representing 85.93% of the shares issued by that company;

b. 1,000 shares of Comet Traitements, representing 85.47% of the shares issued by that company; and

c. 62 shares of Comet Tyre Recycling, representing all of the shares issued by that company.

A true and correct copy of the Auditor's Report is attached hereto as **Exhibit 14**.

27. The Auditor's Report indicates that Comet Group Holding SRL's object is to purchase and sell securities, real estate, and group support services. Further, the purpose of the company is "to enable new shareholders and investors to join the shareholder base of the 'COMET' group. The contribution of the shares issued by COMETSAMBRE SA, COMET TRAITEMENTS SA and COMET TYRE RECYCLING SA forms part of this plan and will enable the company to be formed to fulfil its role as the holding company of the 'COMET' group and, consequently, to achieve its corporate purpose." *See* Exhibit 14 (quotation translated).

28. According to its constitution, Comet Group Holding SRL's Board of Directors is constituted as follows:

a. CBPII SA (permanent representative Philippe Grosjean) serves as Director and President of the Board (Administrateur A).

b. Additional Director (Administrateur A) seats are held by Aurore Grosjean, Charlotte Grosjean, and Maxime Grosjean.

c. SFPIM SA (permanent representative François Fontaine) is a Director (Administrateur B).

d. Sparaxis SA (permanent representative Olivier Bouchat) is a Director (Administrateur B).

e. Pierre-François Bareel serves as Managing Director (Administrateur Délégué). He is also the Comet Group CEO.

*See* Exhibit 4.

## IV. Cometsambre's FY2025 Financials

29. Cometsambre filed its FY2025 annual accounts with the Belgian National Bank on September 9, 2026—past the statutory filing deadline of July 31, 2026. The accounts cover the fiscal year ending December 31, 2025 and were allegedly approved by the general assembly on June 2, 2026. A true and correct copy of Cometsambre's FY2025 financial filing is attached hereto as **Exhibit 15**.

30. The FY2025 accounts reveal the company is in severe financial distress. Total assets contracted 28% year-over-year. Total equity declined 35%. Available cash fell 73% to just $1.87 million.

31. Revenue increased modestly by 3%, but the operating loss widened more than twelvefold to nearly $8 million in FY2025. Financial charges surged 240% to nearly $10.4 million. The net loss for the year to be allocated was $14.5 million, compared to a loss of only $590,000 in FY2024.

32. Cometsambre has only $21,000,000 in available reserves for FY2025.

33. Cometsambre has still not recorded any provision for the Claim in its FY2025 accounts, extending the pattern of zero provisioning to a fourth consecutive year since the Lowlands Fire. The provisions for risks and charges line remain at zero, despite the Lloyd's Judgment that forecloses coverage.

34. The management report acknowledges the fire, notes that the court-appointed expert submitted his final report on February 24, 2026, and states that responsibilities "appear to be shared among several parties."

35. The board of directors expressly acknowledged that the balance sheet shows a loss for both the current and prior fiscal years, triggering a going concern analysis required under Article 3:6 6° of the Belgian Companies and Associations Code. The board's conclusion that going concern accounting "remains appropriate" rests on the company's asserted "ability to meet its obligations and continue its operations in the near future," but provides no detail on how a company with $1.87 million in cash and $40 million in short-term liabilities can meet an uninsured and unprovisioned Claim.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: September 25, 2026
Brussels, Belgium

____________________________
Arthur Seynaeve