Warren E. Gluck
Jacqueline M. Moody
Alex M. Englander (*pro hac vice forthcoming*)
Gluck & Co. LLP
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 897-5887
warren.gluck@gluckllp.com
jacqueline.moody@gluckllp.com
alex.englander@gluckllp.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LALEMANT N.V.<br><br>For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Civil Action No. 26-Misc. ______ |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782</u>**

Lalemant N.V. ("**Lalemant**"), by and through its undersigned counsel, Gluck & Co. LLP, respectfully submits this memorandum of law in support of its application for an Order granting discovery pursuant to 28 U.S.C. § 1782 (the "**Application**"), and states as follows:

## PRELIMINARY STATEMENT

Lalemant submits this Application pursuant to 28 U.S.C. § 1782, seeking an Order authorizing discovery from certain entities found in the Southern District of New York that are in the business of providing banking services and processing wire transfers in New York City,[1] for

[1] Lalemant seeks discovery from Citibank, N.A.; The Bank of New York Mellon; Bank of America, N.A.; BNP Paribas USA; Commerzbank AG, New York Branch; Deutsche Bank Trust Co. Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Société Générale, New York Branch; Standard Chartered Bank USA; UBS AG; Wells Fargo Bank, N.A.; and The Clearing House Payments Company L.L.C. (the "Respondents").

use in its reasonably contemplated foreign civil proceedings in Belgium. In the contemplated Belgian Proceedings, Lalemant intends to assert claims relating to improper dividends, a restructuring that appears to have proceeded in the absence of a major liability being reported, and insolvent trading, against Cometsambre S.A. ("**Cometsambre**"), its directors, and the Comet Group (the "**Belgian Proceedings**").

Cometsambre is indebted to Lalemant for over $30,000,000 as a result of two fires that broke out onboard the vessel the Lowlands Mimosa (the "**Lowlands Fire**"). The cause of the Lowlands Fire related to Cometsambre's inclusion of unreasonably high levels of impurities in its metal. Notwithstanding this significant debt, Cometsambre and its affiliates (defined, *infra*, as the Comet Group) engaged in significant distributions and restructuring in an effort to thwart Lalemant's ability to collect on its Claim (defined below) related to the Lowlands Fire.

Lalemant brings this Section 1782 application to obtain limited, relevant discovery from the New York City correspondent banks and clearing houses that facilitated interbank fund transfers relating to the USD cash revenues, expenses, improper dividends, and restructuring transactions of Cometsambre, the Comet Group, and the relevant defendants, as well as documents relating thereto. Specifically, Lalemant seeks an order authorizing it to issue and serve subpoenas for intermediary bank discovery evidence in order to trace and obtain records of all U.S. dollar-denominated wire transfers between the Discovery Targets[2] and their counterparties – information that is crucial to the adjudication of Lalemant's reasonably contemplated claims to be brought in Belgium.

[2] The following individuals and entities are the "Discovery Targets": (i) Cometsambre S.A.; (ii) Compagnie Belge de Participations Industrielles et Immobilières S.A.; (iii) Comet Traitements S.A.; (iv) Comet France SAS; (v) Comet Fluvial SRL; (vi) Comet Group Holding SRL; (vii) Covanord SAS; (viii) Ecofer S.A.; (ix) La Barrière S.A.; (x) Philippe Grosjean; (xi) Aurore Grosjean; (xii) Charlotte Grosjean; (xiii) Bernard Beyne; (xiv) Joel Blavier; (xv) Maxime Grosjean; (xvi) Pierre-François Bareel.

# BACKGROUND

## I. FACTUAL BACKGROUND

Cometsambre is a Belgian company engaged in ferrous metal recycling and trading. *See* Declaration of Arthur Seynaeve ("**Seynaeve Decl.**") ¶ 8. It operates shredding sites for scrap metal, and the companies it owns or controls—including Comet Fluvial SRL, Comet France SAS, Ecofer SA, Covanord SAS, and La Barrière SCI—operate under the trade name "Comet Group" or "Groupe Comet." *See* Seynaeve Decl. ¶¶ 9-11. Cometsambre's sister company, Comet Traitements S.A., is engaged in post-shredder metal treatment and recycling. *See* Seynaeve Decl. ¶ 10. Compagnie Belge de Participations Industrielles et Immobilières S.A. ("**CBPII**") owns 85% or more of Comet Traitements and Cometsambre. *See* Seynaeve Decl. ¶ 12. The governance of the Comet Group is concentrated among the ultimate beneficial owners of CBPII, principally Philippe Grosjean and members of his family (the "**UBOs**"). *See* Seynaeve Decl. ¶¶ 13-15. Comet Group, as a whole, does business in the United States denominated currency.

The individual Discovery Targets are directors, officers, or permanent representatives of the entities at the center of the contemplated Belgian Proceedings. Philippe Grosjean is the permanent representative of CBPII—which itself serves as a director (administrateur délégué) of Cometsambre—and sits on the boards of Cometsambre, Comet Traitements, and CGH. Aurore Grosjean, Maxime Grosjean, and Joel Blavier are administrators of Cometsambre. Charlotte Grosjean is an administrator of CBPII. Pierre-François Bareel is the Managing Director of both Cometsambre and CGH and serves as CEO of the Comet Group. Bernard Beyne was an administrator of Cometsambre during the relevant period. These individuals and entities approved or oversaw the dividend distributions, the share repurchase, the CGH restructuring, and the late filing of annual accounts that are at the heart of the contemplated Belgian Proceedings.

On June 22-23, 2022, two fires broke out aboard the Lowlands Mimosa while Cometsambre scrap metal was being loaded in Ghent, Belgium (the "**Lowlands Fire**"). *See* Seynaeve Decl. ¶ 6. The fires caused damage exceeding $30 million (the "**Claim**"). *Id.* The cause of the fire related to Cometsambre's inclusion of unreasonably high levels of impurities in its metal. *See* Seynaeve Decl. ¶ 7.

Following the Lowlands Fire, despite the resulting Claim, the Comet Group and the directors of Cometsambre engaged in a series of acts that, taken together, left the company undercapitalized and unable to satisfy its debts. Cometsambre has never recorded a provision for the Claim in any of its accounts for fiscal years 2022 through 2025. *See* Seynaeve Decl. ¶¶ 18-19. In fiscal year 2022, Cometsambre approved a $5,450,000 dividend[3] despite describing the London arbitration as "likely" in its management report. *See* Seynaeve Decl. ¶ 20. In fiscal year 2023, it paid $5,725,000 in dividends, and it closed the following fiscal year with a loss. *See* Seynaeve Decl. ¶ 21. These two post-fire dividends totaled approximately $11.2 million and were drawn predominantly from accumulated reserves, not current earnings. Combined with the FY2022 $8,680,000 repurchase of its own shares from public investors, approximately $19.9 million left the company between FY2022 and FY2024, and no provision was ever recorded for the Claim. Cometsambre had not issued any dividends for the five years preceding the Lowlands Fire. *See* Seynaeve Decl. ¶ 22.

On July 21, 2026, the High Court of England delivered a judgment in favor of Lloyd's of London and against Cometsambre (the "**Lloyd's Judgment**"), holding that Lloyd's properly

[3] Cometsambre reports its annual financials in Euros, regardless of whether it conducts business in United States Dollars. Numbers referenced herein have been converted to dollars uniformly at the relevant prevailing conversion rate.

avoided its insurance contract with Cometsambre on the ground that Cometsambre had failed to disclose prior fires that in general arose from the same cause. *See* Seynaeve Decl. ¶ 24.

Just five days before the Lloyd's Judgment, the UBOs formed Comet Group Holding SRL ("CGH") in Belgium. *See* Seynaeve Decl. ¶ 25. CBPII contributed approximately $135.4 million in kind—consisting of its controlling participations in Cometsambre, Comet Traitements, and Comet Tyre Recycling—in exchange for 87.05% of CGH. *See* Seynaeve Decl. ¶ 26. The mutual veto structure of CGH's board effectively prevents any forced sale or realization of the contributed participations, placing significant governance barriers between creditors and the group's core asset base.

Cometsambre belatedly filed its FY2025 annual accounts on September 9, 2026—past the July 31, 2026 statutory deadline. *See* Seynaeve Decl. ¶ 29. The accounts reveal a company in severe financial distress: total assets contracted 28% year-over-year, total equity declined 35%, available cash fell 73% to just $1.87 million, the operating loss widened more than twelvefold to nearly $8 million, and the net loss reached $14.5 million. *See* Seynaeve Decl. ¶¶ 30-31. Critically, Cometsambre still has not recorded any provision for the Claim, extending the pattern of zero provisioning to a fourth consecutive year. Despite this, the board's going concern analysis provides no detail on how a company with $1.87 million in cash and $40 million in short-term liabilities can meet an uninsured and unprovisioned Claim, especially when all insurance coverage has been affirmatively and judicially denied. *See* Seynaeve Decl. ¶ 35. Cometsambre's financial accounts demonstrate that it is undercapitalized and balance sheet insolvent in virtually any enforcement scenario.

## II. NATURE OF THE DISCOVERY SOUGHT

Lalemant seeks to obtain relevant and probative evidence from Respondents for the adjudication of Lalemant's reasonably contemplated claims against the Discovery Targets in the Belgian Proceedings. Specifically, it seeks to obtain disclosure from the banking institutions and clearing houses in New York City relating to transactions or transfers between and among the Discovery Targets—including dividend payments, share-buyback proceeds, restructuring-related transfers, intra-group payments, and any pledging of assets—and concerning the identity of other individuals and/or entities who may be involved in the improper distributions and the CGH restructuring liability management exercise. The wire-transfer records should identify wire transfers where the Discovery Targets and their corresponding bank accounts are listed as the recipients of each wire transfer, as well as where the Discovery Targets and their corresponding bank accounts are listed as originators of transfers to those involved in the improper distributions and restructuring. Wire transfer records pertaining to this information will help Lalemant identify the individuals and entities to add as defendants in the Belgian Proceedings and also assist in tracing other transactions involved in the improper distributions, the CGH restructuring, and possible insolvency-related transactions.

Based on the records that Lalemant has managed to obtain to date, evidence pertaining to the Discovery Targets will be relevant, important, and useful to Lalemant's adjudication of the reasonably contemplated Belgian Proceedings.

None of the information requested is readily available to Lalemant in the Belgian courts. Nor would granting the assistance requested by Lalemant offend any foreign jurisdiction or circumvent any proof-gathering rules under Belgian law. Moreover, there is no Belgian rule of

evidence that would prevent discovery obtained under 28 U.S.C. § 1782 from being used in the Belgian Proceedings.

The discovery sought is not intrusive or unduly burdensome because it is limited in scope. Lalemant seeks limited records relating to wire transactions for which Respondents were involved as originating bank, beneficiary bank, intermediate or correspondent bank to Clearing House Interbank Payment Systems (CHIPS), or where the Respondents otherwise facilitated interbank fund transfers, or where the Discovery Targets were the recipients or facilitators of transactions in U.S. dollars, as well as documents related thereto.

## ARGUMENT

The Court should grant this Application because Lalemant satisfies each of the enumerated statutory requirements for a Section 1782 action and the discretionary factors all weigh in favor of the requested relief.

### III. STANDARD FOR GRANTING RELIEF

Section 1782 was designed "to liberalize the assistance given to foreign and international tribunals." *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 453 (S.D.N.Y. 2018), *aff'd*, 939 F.3d 520 (2d Cir. 2019). The statute authorizes a United States District Court, upon petition of an interested person, to order a person residing in the district to give testimony or produce documents for use in a foreign proceeding:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusations. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

Thus, Section 1782(a) has three *prima facie* statutory requirements. First, the applicant must be an "interested person" in a foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004). Second, the person from whom discovery is sought must reside or be found in this District. *Id.* Third, the discovery must be for use in a proceeding before a foreign or international tribunal. *Id.*

When all three prerequisites are met, the decision to grant discovery rests with the district court, whose discretion is guided by four factors (the *Intel* factors) articulated by the Supreme Court: (i) whether the person from whom discovery is requested is a participant in the foreign proceeding; (ii) the nature of the foreign tribunal, the character of those proceedings, and the tribunal's receptivity to the federal court's assistance; (iii) whether the applicant is attempting to circumvent discovery restrictions or policies of the foreign tribunal; and (iv) whether the discovery sought is unduly intrusive or burdensome. *Id.* at 264-65. The Second Circuit has repeatedly emphasized that this discretionary analysis must consider the "twin aims" of the statute: "providing efficient means of assistance to participants in international litigation in our courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re B&C Kb Holding GmbH*, 23-1014, 2024 WL 3170983, at *2 (2d Cir. June 26, 2024) (citing *Mees v. Buiter*, 793 F.3d 291, 297-98 (2d Cir. 2015)).

The Court should grant this Application because the statutory requirements are met and the discretionary considerations favor the Application.

## IV. THE STATUTORY REQUIREMENTS OF SECTION 1782 ARE SATISFIED

In providing guidelines for assessing whether to grant discovery assistance, the Supreme Court adopted a liberal interpretation of the statute. *Intel*, 542 U.S. at 259. This Application easily satisfies the statutory requirements set forth in Section 1782: Lalemant is an interested person to a

reasonably contemplated foreign proceeding; the persons from whom discovery is sought (banking and financial institutions in New York City that routinely process U.S.-dollar denominated wire transfers) are found in this District; and the evidence is sought for use in a reasonably contemplated foreign proceeding in Belgium.

### A. Lalemant is an "Interested Person" in a Reasonably Contemplated Foreign Proceeding.

*Intel* highlights the broad applicability of the concept of "interested person." The Supreme Court recognized the definition of an interested party to be any person who "possess[es] a reasonable interest in obtaining [judicial] assistance." *Intel*, 542 U.S. at 256. Here, Lalemant is an "interested person" as that term is used in Section 1782 as the reasonably contemplated plaintiff, or necessary party, in the contemplated action in Belgium against Cometsambre, its directors, and the Comet Group. Lalemant reasonably contemplates at least the following categories of claims: (a) avoidance claims (*actio pauliana*) seeking to challenge the improper post-fire dividends and the CGH restructuring; (b) claims against Cometsambre's directors for breaches of their duties of care in connection with the dividends, the failure to provision for the Claim, the failure to obtain adequate insurance, and the formation of CGH; and (c) claims related to Cometsambre's insolvent trading and potential bankruptcy, including liability for the delayed filing of annual accounts. *See* Declaration of Alexandre Hublet; *see also Matter of Leret*, 981 F. Supp. 2d 66, 69 (D.D.C. 2013) (citing *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to 1782 makes plain that 'interested person' includes 'a party to the foreign litigation.'")).

Courts in this Circuit and sister-Circuits have granted Section 1782 relief with respect to insolvency related matters. *See, e.g., In re Toft*, 453 B.R. 186, 191, fn 5 (Bankr. S.D.N.Y. 2011) ("Section 1782 has been used in connection with insolvency cases."); *Matter of Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996) (affirming a grant of Section 1782

relief relating to a contemplated adversary proceeding in a pending foreign bankruptcy case); *In re Hughes*, 281 B.R. 224, 229 (Bankr. S.D.N.Y. 2002) (analogizing relief under Bankruptcy Rule 2004 to section 1782 relief, affirming the grant of discovery relating to the determination of details relating to a debtor's insolvency); *In re Ernesto Andrade Group*, 712 F. Supp. 3d 438, 440 (S.D.N.Y. 2024) (granting relief related to a foreign proceeding where a debtor was alleged to have taken steps to "organize their insolvency and evade his obligation").

### B. The Respondents Reside or Are Found in This District

The Respondents from whom discovery is sought are banking and financial institutions that "reside" or are "found" in this District. A company is found where it is incorporated, headquartered, or "has systematic and continuous activities." *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (citation omitted). Each of the Respondents either maintains headquarters or regularly does business within the Southern District of New York. *See In re Ernesto Andrade Group*, 712 F. Supp. 3d 438 (S.D.N.Y. 2024) (finding the correspondent banks and The Clearing House "maintain offices and do business within the Southern District of New York").

In the context of Section 1782 discovery, the Second Circuit has exercised jurisdiction over these entities because "the discovery material sought proximately resulted from the respondent's forum contacts." *In re del Valle Ruiz*, 939 F.3d 520, 530 (2d Cir. 2019). As explained in the Gluck Declaration, The Clearing House owns and operates the world's largest U.S.-dollar payment system and is headquartered in New York City; the banks are all CHIPS participants and act as global correspondents for U.S. dollar payments through their New York offices. The discovery sought – namely, records of U.S.-denominated wire transfers routed through New York City and documents related thereto – are in the possession and control of the Respondents and located in

this District. This Court has granted similar applications seeking intermediary bank discovery from The Clearing House and the correspondent banks.[4]

Furthermore, it is reasonable to seek discovery from the Respondents in this District in relation to their banking activities in New York City, where they maintain offices and clearing centers for U.S. dollar-denominated wire transfers. The Respondents all maintain electronic records of fund transfers and routinely produce such records without significant cost or objection. Lalemant anticipates serving the Respondents with subpoenas in this District upon the Court's issuance of an order authorizing discovery. Given the Respondents' "minimal burden" in the discovery context – as they are asked only to provide evidence, not defend their conduct – it is wholly consistent with due process to authorize the requested discovery here. *Nike, Inc v. Wu*, 349 F. Supp. 3d 310, 334 (S.D.N.Y. 2018), *aff'd* 349 F. Supp. 3d 346 (S.D.N.Y. 2018) (affirming magistrate order denying motion to quash and granting cross motion to compel); *see also In re Golden Meditech Holdings Ltd.*, 2024 WL 1349135, at *5 (explaining that in evaluating proportionality, "records and documents relating to wire transactions… are routinely subpoenaed in litigation") (citing *In re Fernando Celso De Aquino Chad*, No. 19MC261, 2019 WL 2502060, at *3 (S.D.N.Y. June 17, 2019); *In re Abraaj Inv. Mgmt. Ltd.*, No. 2023 WL 2674752, at *6; *In re Rodriguez Guillen*, No. 20 Misc. 102, 2020 WL 3497002, at *3 (S.D.N.Y. June 29, 2020)).

[4] *See, e.g.*, *In re Abraaj Investment Mgmt. Ltd.*, 20-MC-229 (VSB), 2023 WL 2674752, at *5 (S.D.N.Y. Mar. 29, 2023) ("The fact that Applicants cannot point to specific intermediary transactions is not cause for rejecting jurisdiction…in fact, it is the very reason that Applicants are seeking to subpoena the entities."); *In re JSC BTA Bank*, 577 F. Supp. 3d 262, 266 (S.D.N.Y. 2021), appeal dismissed (May 10, 2022) (finding Section 1782 requirements were met where intermediary bank "does business (including correspondent and intermediary banking) in the Southern District of New York," even where applicants did not provide evidence of specific transactions through the intermediary banks); *In re Invest Bank PSC*, 567 F. Supp. 3d 449, 451 (S.D.N.Y. 2021) (finding Section 1782 requirements were met where intermediary bank "does business in the Southern District of New York" and applicants sought subpoenas "to reveal the existence and nature of suspected transactions[.]").

### C. The Discovery Sought Is For Use In A Reasonably Contemplated Foreign Proceeding.

The evidence sought in this Application is for use in the reasonably contemplated Belgian Proceedings, which are adjudicative and to be held before a foreign tribunal.

In *Intel*, the Supreme Court confirmed that "[t]he term 'tribunal'… includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." *Intel*, 542 U.S. at 248. The Belgian Proceedings will be pending before the relevant Belgian court.

Moreover, in *Intel*, the Court also relied on the legislative history of the statute to hold that a foreign proceeding need not be pending in order for Section 1782(a) to provide judicial assistance. *Id.* at 258. In fact, the Court expressly rejected the previous view held by another Circuit that a proceeding must be "imminent- very likely to occur and very soon to occur." *Id.* at 259 (rejecting *In re Ishihara Chemical Co.*, 251 F.3d 120, 125 (2d Cir. 2001)). Rather, the Court held that the proceeding must only be within "reasonable contemplation." *Id.* Since *Intel*, District Courts have frequently followed the Supreme Court's ruling that 28 U.S.C. § 1782(a) allows for discovery assistance to proceedings which have not yet been filed. *See e.g.*, *Alerte Congolaise Pour L'Environnement Et Les Droits De L'Homme & Actions Pour La Promotion Et Protection Des Peuples Et Especes Menacees v. Symbion Power LLC*, 25 MISC. 480 (PAE), 2026 WL 2151394, at *1 (S.D.N.Y. July 27, 2026). Lalemant respectfully submits that it has demonstrated that the pending and reasonably contemplated Belgian Proceedings are well within contemplation as commencement of such actions will be necessary to pursue claims against Cometsambre, its directors, and the Comet Group for improper dividends, improper restructuring, insolvent trading, and related breaches of Belgian law, to enforce against Cometsambre any award and judgment Lalemant obtains.

The evidence sought in this Application relates to U.S. dollar-denominated wire transfers processed through the Respondents' New York offices involving the Discovery Targets. Specifically, the evidence is expected to reveal the recipients and routing of approximately $11.2 million in post-fire dividends, whether cash or other consideration flowed alongside the $135.4 million in-kind contribution to CGH, whether Cometsambre or its subsidiaries pledged assets in connection with the restructuring, and whether Cometsambre is meeting its obligations under its credit facility or is experiencing persistent cessation of payments. The Comet Group's systematic efforts to obscure its financial position through delayed filing, restructuring, and dividend stripping make the independent banking records held by the Respondents the only reliable means of establishing the group's true financial position. This information will be used in the reasonably contemplated Belgian Proceedings with respect to establishing the Comet Group's true financial position and the flow of funds underlying the contemplated claims.

## V. THE DISCRETIONARY FACTORS FAVOR GRANTING THE APPLICATION

"Once the statutory requirements are met, the court is free to grant discovery in its discretion." *In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456, 460 (2d Cir. 2014); *Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 96 (2d Cir. 2009) (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004)). Here, in addition to satisfying the statutory requirements under Section 1782, the discretionary factors identified by the Supreme Court in *Intel* weigh strongly in favor of granting the Application.

The first *Intel* factor considers whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. This factor weighs in favor of granting discovery here because none of the Respondents are, or will be, parties to or participants

in the Belgian Proceedings. *See, e.g., Intel Corp.*, 542 U.S. at 244 ("the need for [§ 1782(a)] aid is generally not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"); *In re Fed. Republic of Nigeria*, 21 Misc. 7 (JGK) (VF), 2022 WL 4234556, at *5 (S.D.N.Y. Sept. 14, 2022) ("Here, Respondents are not parties to the English Proceeding.... The first factor thus weighs in favor of granting the application.").

The second *Intel* factor assesses "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance." *Intel*, 542 U.S. at 264. "[O]nly upon authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, should a district court refrain from granting the assistance offered by the act." *Esses v. Hanania*, 101 F.3d 873, 876 (2d Cir. 1996). "Absent such authoritative proof, courts have been instructed to tread lightly and heed only clear statements by foreign tribunals." *In re XPO Logistics, Inc.*, No. 15-mc-205, 2017 WL 2226593, at *6 (S.D.N.Y. May 22, 2017) (citation omitted); *see also In re Bloomfield Inv. Res. Corp.*, 18 MC 2608 (NGG) (CLP), 2018 WL 6418421, at *5 (E.D.N.Y. Dec. 6, 2018) ("The Second Circuit has instructed district courts to be liberal in permitting requested discovery.").

The second *Intel* factor clearly favors Lalemant because there is no evidence that the Belgian Court would be unreceptive to the discovery sought here. Indeed, courts have granted relief under Section 1782 with respect to foreign proceedings in Belgium. *See, e.g., In re Akkermansia Co.*, 22-MC-91577-DJC, 2023 WL 4015992, at *1 (D. Mass. May 5, 2023); *In re Chodiev*, 1:18-MC-13-EGS-RMM, 2021 WL 6805646, at *9 (D.D.C. May 17, 2021)*, objections overruled sub nom. In re Patokh Chodiev & Int'l Mineral Res. B.V.*, CV 18-MC-13 (EGS), 2022 WL 1211794 (D.D.C. Feb. 15, 2022); *Heraeus Med. GmbH v. Biomet, Inc.*, 3:20-CV-802-JD-

MGG, 2021 WL 4133710, at *5 (N.D. Ind. Sept. 10, 2021); *In re Levi Strauss & Co.*, 18-MC-80123-JSC, 2018 WL 3872790, at *1 (N.D. Cal. Aug. 15, 2018).

The third *Intel* factor looks at "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Importantly, this factor does not impose a "foreign-discoverability requirement." *Mees*, 793 F.3d at 303. Nor does this factor require an applicant to demonstrate it attempted to obtain the discovery from another source, such as the foreign tribunal, prior to seeking relief pursuant Section 1782. *Id.* (refusing to engraft "quasi-exhaustion" requirement onto Section 1782); see also *In re BNP Paribas Jersey Tr. Corp.*, 18-mc-00047 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018) ("Courts may grant § 1782 applications even where the applicant did not first seek discovery in the foreign tribunal . . . or where the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding."). This factor similarly weighs in favor of granting the Application because the evidence sought would be admissible in the Belgian Proceedings and does not circumvent any law or policy that would bar such relevant evidence in Belgian courts.

The fourth *Intel* factor examines whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. In assessing this factor, courts assess "whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. The Respondents maintain records of wire transfer activity and can easily search for and produce the requested records without burden or significant expense. *See In re Catalyst Managerial Servs.*, DMCC, 680 F. App'x 37, 39 (2d Cir. 2017) (summary order) (affirming grant of wire transfer discovery from certain banks located in New York); *In re Application of Hornbeam Corp.*, No. 14-mc-424 (Part 1), 2017 WL 2241522, at

*2 (S.D.N.Y. May 22, 2017) (same). As noted above, the requested discovery is relevant to the Belgian Proceedings and will likely lead to additional, highly probative evidence regarding payments relating to the improper dividends, the CGH restructuring, and potential insolvency transactions. Cometsambre is a company engaged in international scrap-metal trading, with sales denominated in U.S. dollars and settled through forward contracts and confirmed irrevocable letters of credit—instruments that require correspondent-bank processing in New York. The Comet Group maintains a short-term credit facility with BNP Paribas Fortis which is the type of transactions routinely processed through U.S. dollar clearing systems. The records of those transfers are maintained by the Respondents in this District. *See* Gluck Decl. ¶¶ 12-18. Thus, the fourth *Intel* factor also weighs in Lalemant's favor.

For these reasons, each of the four discretionary factors weigh in favor of granting the Application.

## CONCLUSION

In sum, the facts in the present matter meet the requirements of 28 U.S.C. § 1782. Consistent with the precedent cited above, Lalemant respectfully requests that the Court (i) grant this Application in its entirety; (ii) enter the Proposed Order; (iii) authorize Lalemant, pursuant to 28 U.S.C. § 1782, to serve subpoenas on the Respondents to obtain the requested discovery; and (iv) grant such other and further relief as this Court may deem just and proper.

Dated: September 28, 2026
New York, New York

Respectfully submitted,

**GLUCK & CO. LLP**

/s/ *Warren E. Gluck*
Warren E. Gluck
Jacqueline M. Moody
Alex M. Englander (*pro hac vice forthcoming*)
305 Broadway, 7th Floor
New York, New York 10007

Telephone: (212) 897-5887
Email: warren.gluck@glucklp.com
jacqueline.moody@glucklp.com
alex.englander@glucklp.com